# BALTIMORE CITY COURT

Filed March 14, 1900.

KATHARINE RENNABERG
VS.
DR. ALBERT S. ATKINSON.

*J. J. McNamara* for plaintiff.

*Wm. S. Bryan, Jr.*, and *Ward B. Coe* for defendant.

RITCHIE, J.—

Oral opinion of the Court, in ruling upon the prayer offered at the close of

the plaintiff's case, that there is no evidence of any failure by defendant to use proper skill and care.

The Court: This is a suit for alleged mal-practice. The defendant, as a physician, was called in to attend the plaintiff, and the plaintiff charges that in his treatment of her he failed to exercise the care and skill ordinarily exercised by other physicians. Whether there is any legal evidence of such failure or not is the question now to be passed upon in view of the evidence that has been offered by the plaintiff.

One who holds himself out to practice as a physician, is required to exercise the care, skill and diligence which are ordinarily exercised by other physicians.

The complaint in this case is that the defendant, by reason of a failure to exercise the degree of care and skill which I have indicated, made a mistake in diagnosing the condition of the plaintiff, and upon the supposed existence of a tumor in her womb advised the plaintiff, in view of her then condition, that it was absolutely necessary that the child, then twelve weeks advanced, should be removed; and that an operation for that purpose should be performed as preliminary to the subsequent operation for the removal of the supposed tumor.

The plaintiff claims there was no tumor in her womb, and that the supposition that there was, was a mistake upon the part of the defendant, and that the operation which he performed for the removal of the foetus was, therefor, altogether unnecessary, and caused her great suffering and critical illness, and impaired her health.

What is the evidence upon this question as disclosed by the plaintiff's testimony? In forming the opinion that there was a tumor, and in performing this operation for the removal of the child, was there, or not, a want of such care and skill as other physicians ordinarily exercise?

In the first place, who is the defendant, so far as his personality, as disclosed by the evidence, may reflect on the question of negligence? We find that he is a graduate of the School of Medicine of the Maryland University, a school of medicine than which probably none stands higher in this country. In the next place, we find that he was employed by the plaintiff because of the high recommendation given to him by another family in which he practiced. Again, this case discloses the fact of the most assiduous and earnest attention upon the part of the defendant to this patient.

I do not think it would be possible to find a case in which the physician took a more earnest interest, and to which he gave more assiduous attention. He visits her two or three times a day, and on one occasion, without being sent for, even at the hour of 3 o'clock in the morning.

In addition to this, not only is the burden of proof on the plaintiff who brings a suit of this kind to show affirmatively the fact of negligence, but there is a presumption in favor of the defendant, under the law, to the effect that he did perform any given operation, or follow any given treatment, with ordinary skill and care.

We come now to the operation of removing the child. The plaintiff claims that there was no tumor and that this dangerous operation was altogether unnecessary. That is the gravamen of the alleged negligence. The plaintiff testifies that Dr. Atkinson stated that there was a tumor and therefore the necessity for the operation. In forming that opinion and acting on it, was there, or not, a want of such care and skill as are usually exercised by other physicians?

A case of this kind, from its very character, must be determined upon medical testimony. No uneducated person—uneducated I mean in medicine or surgery, could give any important evidence on the question of care and skill here involved. The character of the case is such that the question of whether the complaint made is well founded or not must be determined upon expert medical testimony.

In this connection there is one fact that cannot be overlooked, and that is this: Here is a physician, such as I have referred to, who is charged with mal-practice.

It also appears from the evidence that there was another physician, Dr. Miller, whose skill, care and ability are not questioned, and this other physician knew everything, almost, about the treatment that Dr. Atkinson followed with respect to this plaintiff. He was called in, in consultation; he knew the condition of the plaintiff before and at the time of the operation, and also the opinion that had been ex-

pressèd by Dr. Atkinson. Dr. Miller knew what was his judgment of her condition, and also made his own independent examination of the plaintiff. Knowing the condition of the plaintiff, and knowing Dr. Atkinson's treatment, if anybody is competent to testify as to both, Dr. Miller is the man.

Why is not Dr. Miller called? If there was any misjudgment as to her condition, if there was any want of skill shown by Dr. Atkinson, who is so able to tell us about it as Dr. Miller? Yet knowing Dr. Miller's connection with the case—with Dr. Miller in the court room, Dr. Miller, the man best competent to speak, is not put upon the stand by the plaintiff.

What is the medical testimony relied on? It is that of two physicians, Dr. Wilbur and Dr. William Pearce, who, however, never saw the plaintiff until four or five days after the operation, and not until Dr. Atkinson's services had been dispensed with. About all they are able to testify to is as to her condition at that time. One of these gentlemen, Dr. Wilbur Pearce, says, that he then saw no evidence of any tumor, and both say her condition then showed some septic infection.

Now that is all you have in this case. That is all there is in this case upon which to base a charge of mal-practice against Dr. Atkinson, all upon which to found a charge that the operation was unnecessary.

What is the evidence to the contrary as disclosed by the plaintiff's testimony? It is, in the first place, that Dr. Atkinson made three examinations and said there was a tumor. But that is not all. Before acting upon his own judgment he calls Dr. Miller in consultation, and Dr. Miller agrees with him —he agrees with Dr. Atkinson in the opinion that an operation to remove the foetus was necessary, and makes an appointment to come on the following afternoon and perform it himself.

But more than this, both of the plaintiff's medical witnesses testify that they saw no evidence that the plaintiff had been unskillfully or improperly treated.

In the face of this evidence produced by the plaintiff, with nothing, as I say, to impair it except the statement of Dr. Wilbur Pearce that, on one examination, four or five days after the operation, he saw no evidence of a tumor, how is it possible to say that there is any legal evidence in this case of malpractice on the part of Dr. Atkinson, in deciding that there was a tumor and that an operation was necessary to remove the foetus?

Is the evidence that Dr. Atkinson made three examinations and said there was a tumor, and that Dr. Miller, who also made an examination, agreed with Dr. Atkinson as to the necessity of the operation, seriously affected, because Dr. Pearce,, without stating that there had not been any tumor, says he did not see any evidence of a tumor?

But although the decided weight of the testimony shows that this operation was necessary, let us suppose Dr. Atkinson was mistaken—what then? If he made a mistake, Dr. Miller made the same mistake, and if there was a mistake, it was evidently one only of judgment, which is not malpractice.

This plaintiff thus failing altogether to show that this operation was not necessary, the fact that Dr. Atkinson performed it next morning, in anticipation of the hour when he and Dr. Miller were to meet, and when Dr. Miller was to perform it, cannot of course constitute malpractice, nor, on the evidence, can the further fact that Dr Atkinson did not completely remove the foetus, but left in part of it, which was removed three or four hours after by Dr. Miller.

When Dr. Atkinson called next morning he found the plaintiff, who had been over exerting herself during the night, quite ill and suffering, and, in the absence of any explanation, we may well infer that there was urgent reason for prompt action, without waiting for the hour of appointment with his brother physician.

The only other thing I need note is that Dr. Wilber and Dr. William Pearce both say when they saw Mrs. Rannaberg on the 4th or 5th of February, her high fever and high pulse indicated some septic affection.

Both also say it is difficult to tell what is the cause of septic affection, and Dr. William Pearce says that it will result frequently when every precaution has been taken. No inference of any want of skill can be inferred from this evidence, especially as both these doctors say that they saw no evidence of any want of care and skill.

I must grant the prayer of the defendant that there is no evidence of a failure to exercise proper care, skill and diligence.